UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FABIAN ERNESTO GUIDA,<br><br>Plaintiff,<br><br>v.<br><br>LOREN K. MILLER, et al.,<br><br>Defendants. | Case No. 20-cv-01471-LB<br><br>**ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 31, 33 |

### INTRODUCTION

The plaintiff, a citizen of Argentina and an equestrian vaulting coach, had an O-1A nonimmigrant work visa for immigrants of extraordinary ability, enabling him to work in the United States lawfully. Because he wants to remain here permanently, he applied for an EB-1 visa, also known as an "extraordinary ability" visa.[1] The U.S. Citizenship and Immigration Service (UCIS) denied his application on the ground that the plaintiff established only two (and not the required three) regulatory criteria. The plaintiff challenges that decision as arbitrary and capricious.[2] The parties both moved for summary judgment. The court grants the government's motion and denies

---

[1] Am. Compl. – ECF No. 28. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 2).

ORDER – No. 20-cv-01471-LB

the plaintiff's motion because the plaintiff did not establish eligibility for a third criterion by a preponderance of the evidence. The agency's action was thus not arbitrary and capricious.

## STATUTORY FRAMEWORK

The Immigration and Nationality Act (INA) has an employment-based immigration preference — in the form of an EB-1 visa — for aliens of "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A). The alien also must show that he "seeks to enter the United States to continue work in the area of extraordinary ability" and that his "entry into the United States will substantially benefit prospectively the United States." *Id.* Unlike other employment-based preferences, the EB-1 visa does not depend on an offer of employment in the United States, and it is exempt from the requirement that employers must first look for qualified domestic workers. 8 C.F.R. 204.5(h)(5); *Kazarian v. USCIS*, 596 F.3d 1115, 1119–20 (9th Cir. 2010).

"Extraordinary ability" is defined as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). An alien's petition for an EB-1 visa "must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." *Id.* § 204.5(h)(3). "Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

*Id.* § 204.5(h)(3)(i)–(x).

If an alien meets his initial evidentiary burden (either that he received a "major, international recognized award" or, relevantly here, satisfied three or more of the other criteria), then the USCIS determines — in a "final merits determination" — whether the evidence demonstrates extraordinary ability. *Kazarian*, 596 F.3d at 1119–21. The agency "determines whether the evidence demonstrates both a 'level of expertise indicating that the individual is one of that small percentage who have risen to the very top of their field of endeavor,' and 'that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.'" *Id*. at 1119 (cleaned up) (quoting 8 C.F.R. § 204.5(h)(2)–(3)).

**STATEMENT**

The plaintiff — a citizen of Argentina — has worked for over 20 years coaching equestrian vaulting, which "is most often described as gymnastics and dance on horseback [and] can be practiced both competitively or non-competitively."[3] The USCIS granted him an O-1A visa to work in the United States as a vaulting coach.[4] On July 30, 2018, the plaintiff applied for an EB-1

---

[3] Administrative Record (AR) 297.

[4] Am. Compl. – ECF No. 28 at 2 (¶ 2).

visa.[5] The agency denied the application on May 3, 2019, but after the plaintiff filed this lawsuit, it reopened the case and asked for more evidence before ultimately denying the plaintiff's application.[6] The next sections summarize the evidence that the plaintiff submitted to the USCIS, the agency decision, and the procedural history.

**1. Evidence Submitted to the USCIS**

The plaintiff submitted the following evidence in support of the relevant criteria under 8 C.F.R. § 204.5(h)(3).

To support the criterion at 8 C.F.R. § 204(h)(3)(vii), evidence of the display of the alien's work or showcases, he provided articles and photographs from the 2010 "Virada Esportiva" in Sao Paolo, Brazil, a 24-hour uninterrupted sports event attended by over three million people.[7]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(viii), evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation, he submitted (1) a letter from the co-chair of the board of directors for the Woodside Vaulters, discussing the winning reputation of the organizations and the plaintiff's critical role in coaching them to success,[8] and (2) a 2018 letter from Yanina Alvarez, the Chair of Vaulting Committee of the Argentine Equestrian Foundation, confirming that the Foundation selected him to be the team's official lunger at the 2018 World Equestrian Games and confirming that he was the National Coach at the 1994 World Games, where the teamy won fifth place.[9]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(iv), evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same field of specialization for which classification is sought, he submitted (1) a letter from Yanina Alvarez confirming that the plaintiff was a vaulting judge for two major vaulting competitions (one in

---

[5] AR 14, 297.
[6] AR 14.
[7] AR 224–44.
[8] AR 374–75 (letter), 376–91 (awards).
[9] AR 393.

September 1995 and the other in November 1995), and (2) confirmation from the Argentinian Equestrian Federation that that the plaintiff passed a 130-hour national vaulting-judge course.[10]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(ii), documentation of the alien's membership in associations requiring outstanding achievements, as judged by recognized national or international experts, the plaintiff — contending that his selection to coach the Brazilian National Equestrian Vaulting and the Argentinian National Equestrian Vaulting teams were the equivalent of this criterion — submitted (1) a letter from Vera Ceschin, the vaulting director for the Brazilian National Equestrian Federation, stating that the plaintiff was the national coach for the Brazilian vaulting team from 2000 to 2004, that position is awarded to the coach of the first-place team in Brazil (here, the plaintiff), and during his tenure, the plaintiff's team placed ninth at the "FEI World Equestrian Games" in Spain,[11] and (2) a 2020 letter from Ms. Alvarez listing the criteria for selection of the national coach by the Argentinian Equestrian Federation, including certified professional training, international awards, an innovative work project in the medium and long term, and demonstrated leadership ability.[12]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(i), documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence, the plaintiff submitted (1) a letter from Romeu Leite, the president of a premier equestrian facility in Brazil, verifying that while the plaintiff was the head vaulting coach from 2004 to 2010, his team was the Brazilian national and regional champion for five years in a row,[13] (2) the 2018 letter from Ms. Alvarez describing how — based on his career and experience — the Federation chose the plaintiff to be the team's official lunger for 2018 World Games and confirming that he was national coach for the national team in 1994, where they placed fifth at the Games,[14] and (3) the

---

[10] AR 40–46.
[11] AR 58.
[12] AR 59–60.
[13] AR 54–57.
[14] AR 393.

letter from Ms. Ceschin about his tenure as Brazil's national coach from 2000 to 2004 and placed ninth at the World Games.[15]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(iii), published material about the alien, the plaintiff submitted (1) an excerpt from an article in an American Vaulting Association publication titled *AVA Summer Camp 2011*, discussing the camp and featuring "the international coaching phenoms Fabian and Flavia Guida," and (2) an excerpt from the 2012 American Vaulting Association regional newsletter discussing vaulting clinics led by the plaintiff and his wife.[16]

To support the criterion at 8 C.F.R. § 204.5(h)(3)(v), evidence of the alien's original scientific scholarly, artistic, athletic, or business-related contributions of major significance, the plaintiff submitted a letter from Kai Vorberg, an international award-winning professional vaulter, that said the following about the plaintiff's coaching:

> I do remember very clearly how [Plaintiff] was being coach and lunger of the Brazilian team at the FEI World Equestrian Games in Jerez de la Frontera/Spain in the 2002 season. Their freestyle was remarkable innovative showing exercises in their routine which people in the world of vaulting have never seen before. Due to the fact that until that point Brazil has never been a strong nation in equestrian vaulting, it was clear for all of us in the vaulting community that there was a coach with extraordinary ability and talent and outstanding coaching skills making his way into the international top level sport and supporting his team to make it to the finals for the first time ever in Brazilian vaulting history. . . . It is fair to say that the experience of having been working together with [Mr. Guida] is still influencing my work as a coach and his advice means a lot to me even until today. In March 2018 I have just met [Mr. Guida] again at the annual Education Symposium of the American Vaulting Association (AVA) in Las Vegas at the South Point Hotel and Arena from 1st until 4th of march, where I could clearly see that his influence as a coach is already visible in his vaulters, the way they vault and the way they try to become better athletes. Also especially with his skills as a lunger, Fabian is one of a few who reached the top of this field in the US Vaulting Community. Even by that short period of time, he has made significant contributions to the development of the sport of US Equestrian Vaulting.[17]

As further evidence that he is considered to be at the top of his field, the plaintiff submitted letters from other award-winning vaulting coaches and vaulting athletes attesting to his expertise:

---

[15] AR 58.

[16] AR 413–14, 416–17.

[17] AR 308–09.

(1) Isabelle Bibbler Parker, the current Vaulting Director of performance for the U.S. Equestrian Federation, an equestrian medalist, an American Vaulting Association judge, and an American Vaulting Association Hall of Fame coach;[18] (2) Devon Maitozo, president and founder of Free Artists Creative Equestrians, with two gold medals, dozens of national titles, and a long-time vaulting coach;[19] (3) Megan Benjamin Gulmarin, a vaulter, a multiple medal winner at the World Games, and an American Vaulting Hall of Fame recipient;[20] (4) Emmy Seely, head coach at the Mt. Eden Vaulting Club, Board member of the American Vaulting Association, and former national and individual vaulting champion;[21] (5) Priscila Botton, former coach of the Brazilian national team, former member of the International Equestrian Foundation, and a member of the Foundation's 2013 Vaulting Judges Supervisory Panel;[22] and (6) Akiko Yamazaki, a former competitive equestrian, an advisory board member of the U.S. Equestrian Team Foundation, and parent to two Woodside Vaulters athletes coached by the plaintiff.[23]

**2. Agency Decision**

On September 23, 2020, following its reopening of the case after the petitioner filed this lawsuit, the agency denied the plaintiff's application. It held that at step one, the plaintiff met two of the required three criteria under 8 C.F.R. § 204.5(h)(3): (1) evidence of the display of the alien's work in the field at artistic exhibitions or showcases, 8 C.F.R. § 204.5(h)(3)(vii); and (2) evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation, *id.* § 204.5(h)(3)(viii).[24] In reaching its decision, it determined that the plaintiff failed to establish the other regulatory criteria: (1) receipt

---

[18] AR 428.
[19] AR 433–34.
[20] AR 436–38.
[21] AR 440–43.
[22] AR 445–46.
[23] AR 448–52.
[24] AR 1–3.

of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor, *id.* § 204.5(h)(3)(i);[25] (2) membership in associations in the field for which classification is sought, *id.* § 204.5(h)(3)(ii);[26] (3) published material about the alien in professional or major trade publications or other major media, *id.* § 204.5(h)(3)(iii);[27] (4) participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought, *id.* § 204.5(h)(3)(iv);[28] and (5) original scientific, scholarly, artistic, athletic, or business-related contribution of major significance in the field, *id.* § 204.5(h)(3)(v).[29]

First, as to the plaintiff's receipt of lesser nationally or internationally recognized prizes or awards, *id.* § 204.5(h)(3)(i), the agency listed the alleged prizes and awards (spanning more than half a single-spaced page), said much of the documentation was not primary evidence of the claimed awards (and instead was comprised of letters, documents of unknown origin, and coverage from websites of unknown authority), and was not in English (and when it was, the translations were not certified as required by USCIS regulations, 8 C.F.R. § 103.2(b)(3)). Also, the documentation did not establish that the claimed awards were awards (e.g., whether placing fifth or ninth in the World Games was an award). It said that qualifying to compete was not a prize or award. For cases where the claimed award was where students and teams won competitions, the record lacked evidence that the wins were "nationally or internationally recognized." The agency gave other examples of the deficiencies: the 2008 championship was shown only by a computer printout, the 2009 championship was shown by a foreign blog (with no certified translation) and no information about the award, and the record did not have evidence that the qualifying events actually were nationally or internationally recognized prizes or awards. The agency notified the plaintiff of the deficiencies in June 2020, advising him that he needed to provide a copy of the

---

[25] AR 3–6.
[26] AR 6–8.
[27] AR 8–10.
[28] AR 11.
[29] AR 11–12.

awards or prizes, a clear photograph of them, or a public announcement. It gave him instructions on how to establish that the prices were nationally or internationally recognized (such as submitting the criteria or other evidence). The plaintiff submitted some evidence (an article, the letter from Mr. Leite, and the letter from Ms. Ceschin), but the agency concluded that the record did not establish that an event open to international competition was a nationally or internationally recognized prize or award for excellence in the field. After reviewing all of the evidence, the agency concluded that the plaintiff did "not meet the plain language of the criterion."[30]

Second, as to membership in associations, *id.* § 204.5(h)(3)(ii), the agency said that the plaintiff's assertion — being selected as coach of the Argentinian and Brazilian national teams was comparable evidence that he met this criterion — was not sufficient. While "[t]he record does indicate that the petitioner acted as coach for these two teams[,] . . . [it] lacks sufficient documentation to suggest that his employment as a coach is comparable to membership in an organization requiring outstanding achievement of their members as judged by recognized national or international experts in the field." The agency noted that "election to a national all-star or Olympic team *might* serve as comparable evidence for evidence of membership in 8 C.F.R. § 204.5(h)(3)(ii) [under the applicable Adjudicator's Field Manual, but the same section of the manual provides that]. . . the petitioner should explain why it has not submitted evidence that it would satisfy at least three of the criteria set forth in 8 C.F.R. § 204.5(h)(3) as well as why the evidence it has submitted is comparable to that required under 8 C.F.R. § 204.5(h)(3)." In any event, the agency said, the record did not establish comparable evidence of this criterion. It gave him an opportunity to submit more evidence, and he submitted the Leite, Ceschin, and Alvarez letters. But he did not explain "why the regulatory criteria are not applicable to his occupation . . . or demonstrate[] how his evidence is comparable to the regulatory requirement." The record also lacked evidence to support his claim that he coached for teams that are the equivalent of Olympic teams or that his employment as a coach was comparable to membership in an organization requiring outstanding achievements. There was no corroborating evidence for the Alvarez letter

---

[30] AR 3–6.

about the requirements for head coach (such as bylaws or a constitution). The record did not establish any awards to the petitioner. After reviewing all of the evidence, the agency concluded that the plaintiff did not "meet the plain language of the criterion."[31]

Third, as to published material about the plaintiff, 8 C.F.R. § 204.5(h)(3)(iii), the agency listed the plaintiff's submissions and found they did not meet the plain language of the criterion on grounds that included the following: (1) one article was about the plaintiff but there was no evidence that it was published or was major media; (2) another article did not list the author (in violation of the requirements of 8 C.F.R. § 204.5(h), which requires the author's name), and primarily was about someone that the plaintiff trained; (3) another article similarly did not list the author and was about the AVA Summer Camp, not the plaintiff; (4) another article was about the plaintiff and his wife, but was a short article in a regional newsletter, not a professional or trade publication or other major media; (5) another article from the Vaulting website was about the plaintiff, and the author was identified (albeit only by screen name), but there was no documentation about the nature of the website and whether it was "commensurate with professional or other major media;" (6) another article was published in 2019, after the petition was filed, and in any event was not about the plaintiff; (7) the 2011 video interview by a Brazilian journalist had no transcript, and the English translation of the Wikipedia page (not a reliable source) was not certified in accordance with 8 C.F.R. § 103.2(b) and in any event shows only participation in the video interview; also, there was no documentation of the interview itself, and no evidence about broadcast in major media; and (8) another article also was from Wikipedia and thus was not a reliable source. The agency advised the plaintiff of the issues and gave an opportunity to provide more information. The plaintiff did not. Thus, the agency concluded, the plaintiff did "not meet the plain language of the criterion."[32]

Fourth, as to participation on a panel as a judge of the work of others, *id.* § 204.5(h)(3)(iv), the agency noted that the plaintiff relied only on his resume, the Botton letter (which said only that he

---

[31] AR 6–8 (cleaned up).
[32] AR 8–10.

ORDER – No. 20-cv-01471-LB            10

gave clinics in countries such as the U.S., Canada, Peru, and Argentina), and other documentation about training as a vaulting judge in 1995 (without reference to the events judged). Thus, the agency concluded, the plaintiff did "not meet the plain language of the criterion."[33]

Fifth, as to evidence of the plaintiff's original scientific, scholarly, artistic, athletic, or business-related contribution of major significance in the field, *id.* § 204.5(h)(3)(v), the plaintiff claimed that his work met that criterion, as substantiated by the Vorberg letter, the alleged awards discussed above, and certificates for lectures in 2007 and 2013. The agency said that the record suggested that the plaintiff made original contributions to the field, but there was no evidence that the contributions were of "major significance." "For instance, Mr. Vorberg references the [plaintiff's] work at the 2002 [World Games], stating that their freestyle was remarkably innovative, showing exercises in their routine which people in the world have never seen before, but does not explain how this innovation was of significance in the field." Similarly, the agency said, the plaintiff contended that his vaulters were "top athletes," with awards showing original contributions, comparable to an Olympic sport. But, the agency said, vaulting was not commensurate with an Olympic sport, and it noted that the plaintiff's teams never placed higher than fifth place. It also said at the plaintiff's "couple of lectures at universities" were not — on the record — contributions of major significance in the field. It advised the plaintiff of the deficiencies and how to cure them (through, for example, documents about contributions to the field), but the plaintiff did not provide new evidence. Thus, the agency concluded, the plaintiff did "not meet the plain language of the criterion."[34]

The agency thus determined that because the plaintiff showed only two (and not three) criteria by a preponderance of the evidence, it would not conduct its final merits determination.

---

[33] AR 11.

[34] AR 11–12.

### 3. Procedural History

The plaintiff filed a complaint and then a first amended complaint after USCIS denied his petition on September 23, 2020.[35] The parties each moved for summary judgment.[36] The court held a hearing on February 11, 2021. All parties consented to magistrate-judge jurisdiction.[37]

## STANDARD OF REVIEW

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The challenged agency action (if not made reviewable by statute) must be a "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704; *see Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017).

"The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be — (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2). "'Review under the arbitrary and capricious standard is deferential[.]'" *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 920 (9th Cir. 2018) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). "[A court's] proper role is simply to ensure that the agency made no clear error of judgment that would render its action arbitrary and capricious, and [courts] require only a rational connection between facts found and conclusions made by the defendant agencies." *Id.* (cleaned up and quotations omitted).

"Accordingly, [courts] will not vacate an agency's decision unless the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the

---

[35] Compl. – ECF No. 1; Am. Compl. – ECF No. 28.

[36] Mot. – ECF No. 31 at 16–24; Cross-Mot. – ECF No. 33 at 16–28.

[37] Consents – ECF Nos. 10, 15.

product of agency expertise.'" *Id.* at 921 (cleaned up) (quoting *Nat'l Ass'n of Home Builders*, 551 U.S. at 658); *accord Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007) ("[Courts] are not empowered to substitute [their] judgment for that of the agency.") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (cleaned up)).

"Nevertheless, to withstand review[,] 'the agency must articulate a rational connection between the facts found and the conclusions reached.'" *Sierra Club*, 510 F.3d at 1023 (internal brackets omitted) (quoting *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156–57 (9th Cir. 2006), *abrogated on other grounds by Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2009). "[Courts] will defer to an agency's decision only if it is 'fully informed and well-considered,' and [they] will disapprove of an agency's decision if it made 'a clear error of judgment.'" *Id.* (cleaned up) (quoting *Save the Yaak Comm. v. Block*, 840 F.2d 714, 717 (9th Cir. 1988); *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000)). "Furthermore, when an agency has taken action without observance of the procedure required by law, that action will be set aside." *Id.* (citation omitted).

"When a party seeks review of agency action under the APA before a district court, the district judge sits as an appellate tribunal." *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (cleaned up) (quoting *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009)). "In APA cases the administrative record is 'the whole record,' which 'consists of all documents and materials directly or indirectly considered by agency decision-makers.'" *Id.* at 1063–64 (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).

A motion for summary judgment may be used to seek judicial review of agency administrative decisions. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994).

## ANALYSIS

The plaintiff challenges the USCIS's determination about the following regulatory criteria: (1) evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought, 8 C.F.R. § 204.5(h)(3)(iv); (2) documentation of the alien's receipt of lesser nationally or internationally

recognized prizes or awards for excellence in the field of endeavor, *id.* § 204.5(h)(3)(i); (3) documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, *id.* § 204.5(h)(3)(ii); and (4) evidence of original scientific, scholarly, artistic, athletic, or business-related contribution of major significance in the field, *id.* § 204.5(h)(3)(v).[38] His main argument is that the agency erred — and was arbitrary and capricious — because it did not apply the preponderance-of-the-evidence standard when it weighed the plaintiff's evidence.[39] He does not ask for a reweighing of the evidence and instead asks for a determination that the agency did not apply the appropriate standard.[40] The court denies summary judgment.

The plaintiff had the burden of proof to establish by a preponderance of the evidence that he met three of the relevant criteria.[41] The government does not contest that the standard is preponderance of the evidence, meaning, whether the plaintiff established his claims are "more likely than not."[42] Nothing in the record suggests that the agency did not apply this standard.

Instead, the plaintiff's argument effectively is that the agency erred in its discounting of his evidence. The issue thus is whether the agency action was arbitrary and capricious when it rejected his claim that he met the four relevant regulatory criteria: (1) judge of the work of others, 8 C.F.R. § 204.5(h)(3)(iv); (2) receipt of lesser nationally or internationally recognized prizes or awards for excellence, *id.* § 204.5(h)(3)(i); (3) membership in associations that require outstanding achievements of their members, *id.* § 204.5(h)(3)(ii); and (4) original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field, *id.* § 204.5(h)(3)(v).[43]

---

[38] Pl. Reply and Opp'n – ECF No. 34 at 2.

[39] *Id.* at 6.

[40] *Id.*

[41] Gov't Reply – ECF No. 35 at 2.

[42] *Id.* at 2–3.

[43] Pl. Reply and Opp'n – ECF No. 34 at 6.

ORDER – No. 20-cv-01471-LB                                14

First, as to judge of the work of others, *id.* § 204.5(h)(3)(iv), the agency provided a detailed explanation of the deficiencies in the plaintiff's evidence.[44] Particularly, it rejected the plaintiff's training certificate from the Argentinian Equestrian Federation and the Alvarez letter saying that the plaintiff was a vaulting judge at two different events. The agency said that there were no details about what event the plaintiff was judging, who he was judging, or the basis for Ms. Alvarez's knowledge of or the Federation's authority regarding the plaintiff's judging history.[45] *Cf. Buletini v. INS*, 860 F. Supp. 1222, 1231 (E.D. Mich. 1994) (agency's denial was arbitrary and capricious where the plaintiff provided specific evidence that he was the chairman of a scientific council that "is responsible for directing the research and scientific work that is done at the Korce Hospital and for judging the work of all doctors engaged in such work" there). That the plaintiff may disagree with the agency's interpretation of the evidence does not make its decision arbitrary or a legal error. *Cf. Victorov v. Barr*, No. CV 19-6948-GW-JPRx, 2020 WL 3213788, at *7 (C.D. Cal. Apr. 9, 2020) ("the Court cannot substitute its judgment for that of the agency in weighing the evidence . . . . [Its] role is limited to determining if the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made").

Second, as to receipt of lesser nationally or internationally recognized prizes or awards for excellence, 8 § C.F.R. § 204.5(h)(3)(i), the agency's denial also was not arbitrary and capricious. Among other things, the agency said that (1) there was no "primary" evidence of the awards (and only letters describing receipt of awards), (2) many documents either were not in English or had uncertified translations, (3) evidence of the plaintiff's team's placing fifth or ninth in a competition or qualifying to compete in another event was not evidence of "awards," and (4) while there was evidence of awards, there was no evidence that the awards were nationally or internationally recognized.[46]

---

[44] *See* Statement.

[45] AR 11.

[46] AR 3–6.

The plaintiff contends that the agency did not consider the Leite letter (saying that he coached the team to five national and regional champions) or an article showing the international wins by the plaintiff's students.[47] To the contrary, the agency rejected the letter because the pictures of the actual awards attached to the letter were illegible or had no English translations.[48] The article describing the students' wins was not accompanied by the certified English translation required by the regulations. 8 C.F.R. § 103.2(b)(3) ("Any document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English").

The plaintiff also contends that the agency did not provide "a reason to discount" the 2007 Gold Medal win at the CVI Latin American Vaulting Competition.[49] To the contrary, the agency observed that the CVI wins are "qualifying events to allow for participation in a larger competition later." But it concluded that it was unclear that those wins were "in and of themselves, nationally or internationally recognized prizes or awards."[50] When the agency invited the plaintiff to cure the deficiency, the plaintiff noted only that the "I" in "CVI" stands for "international." The agency determined that an event that is open to international participants does not establish its international or national significance or recognition.[51]

Third, as to membership in associations that require outstanding achievements of their members, 8 C.F.R. § 204.5(h)(3)(ii), the agency rejected the plaintiff's evidence. The plaintiff's main argument is that the agency erred when it required him to first show that none of the regulatory criteria applied to his field. *See id.* § 204.5(h)(4) ("if the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish

---

[47] Mot. – ECF No. 31 at 19.

[48] AR 6.

[49] Pl. Reply and Opp'n – ECF No. 34 at 12.

[50] AR 4, 114 (noting that CVI competitions are "vaulting competitions at which vaulters can earn qualifying points for the next world championships. They are also a way for advanced vaulters to experience the honor of representing their country at an international level").

[51] AR 5–6.

ORDER – No. 20-cv-01471-LB                        16

the beneficiary's eligibility"). Instead, he contends that because the analogous O-1 visa — a temporary nonimmigrant visa for a person of "extraordinary ability" — allows for comparable evidence without showing that "all or a majority of the criteria" do not readily apply, the same analysis should apply here.[52] The plaintiff cites no authority holding that the agency must assess EB-1 and O-1 visas in the same way. Moreover, as the Ninth Circuit has recognized, the EB-1 visa is unique in that its recipients are "priority workers," and the applicable regulations "regarding this preference classification are extremely restrictive." *Kazarian*, 596 F.3d at 1120 (cleaned up). Also, contrary to the plaintiff's contention, the agency explained its rejection of the Ceschin letter. It noted that the plaintiff was the national coach for the Brazilian Vaulting Team (a position awarded to the coach of the first-place team in Brazil), but the record lacked other information "to suggest [that the plaintiff's] employment as a coach was commensurate with membership in an association requiring outstanding achievements."[53] The court cannot weigh the evidence in place of the agency's assessment. *Cf. Victorov*, 2020 WL 3213788 at *7 (agency appropriately denied EB-1 application where it identified deficiencies in the comparable evidence).

Fourth, as to original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field, 8 C.F.R. § 204.5(h)(3)(v), the agency's decision also was not arbitrary and capricious. The plaintiff argues that (1) the agency prematurely conducted a final merits determination by requiring him to show that his original contributions were "of major significance," and (2) the agency failed to consider the letters of recommendations he submitted.[54] These contentions are not supported by the record. First, it is appropriate for the agency to assess whether the evidence shows the plaintiff's major significant contribution. *Cf. Visinscaia v. Beers*, 4 F. Supp. 3d 126, 134–35 (D.D.C. 2013) (at step one, the agency did not act arbitrarily when it concluded that "none of the[] letters provided specific information relating to the impact of

---

[52] Mot. – ECF No. 31 at 20–21 (citing USCIS, Policy Manual, vol. 6, pt. M ch. 4 ("A petitioner is not required to show that all or a majority of the criteria does not readily apply to the beneficiary's occupation before USCIS will accept comparable evidence")); Pl. Reply and Opp'n – ECF No. 34 at 13–14.

[53] AR 7–8.

[54] Mot. – ECF No. 31 at 23; Pl. Reply and Opp'n – ECF No. 34 at 16–17.

[applicant's] dance technique on the field as a whole"). Second, that the agency did not list the letters of recommendation does not mean that its rejection of them is legal error. *Cf. Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) ("[T]he [agency] does not have to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.") (cleaned up). After the plaintiff submitted his application and supporting letters, the agency told him that the letters "must provide as much detail as possible about [his] contributions and must explain in detail how the contributions are original (not merely replicating the work of others) and of major significance."[55] It also noted that statements about original contributions that are not supported by "independent, corroborating evidence are insufficient."[56] The plaintiff did not address the agency's concerns.[57] In any event, the agency may reject supporting letters that lack "specific evidence" about how the plaintiff's contribution was a major contribution. *Cf. Visinscaia*, 4 F. Supp. 3d at 134–35.

In sum, the agency's denial of the plaintiff's EB-1 visa was not arbitrary and capricious.

## CONCLUSION

The court denies the plaintiff's motion and grants the government's cross-motion. This disposes of ECF No. 31 and 33.

**IT IS SO ORDERED.**

Dated: February 16, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[55] AR 84, 104.

[56] AR 104.

[57] AR 12.